UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

MICHAEL MCCLENTON,

                    Plaintiff,                    **05 Civ. 2844 (JGK)**

          - against –                             <u>**OPINION & ORDER**</u>

FREDRICK MENIFEE, ALLISON HENRY, KEN
WALICKI, D.WYNKOOP, SOTO ANDRIKOS, L.
KNOBLAUCH, JOSEPH WILNER, DHO OFFICER
BANKS, C.O. NEALY, C.O. MARCHAZE, M.E.
RAY, and HARRELL WATTS,

                    Defendants.

────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Michael McClenton, brought this action

against twelve current and former employees of the Bureau of

Prisons ("BOP"), in their personal and official capacities,

seeking compensatory and punitive damages.  He also seeks a

preliminary injunction.

     In the complaint, the plaintiff has named Frederick

Menifee ("Menifee"), the Warden of FCI Otisville; Allison

Henry ("Henry"), the plaintiff's Case Manager; Ken Walicki

("Walicki"), a Unit Manager; D. Wynkoop ("Wynkoop"), a Unit

Secretary; Soto Andrikos ("Andrikos"), the plaintiff's Case

Manager; L. Knoblauch ("Knoblauch"), a Paralegal Assistant;

Joseph Wilner ("Wilner"), the Associate Warden of FCI

Otisville; Disciplinary Hearing Officer Banks ("Banks");

Correction Officer Neely ("Neely"); Correction Officer

Marchase ("Marchase");[1] M.E. Ray ("Ray"), the Northeast

Regional Director; and Harrell Watts ("Watts"), the

Administrator for National Inmate Appeals.

The plaintiff asserts claims (1) under the First

Amendment to the United States Constitution, alleging that he

was subject to retaliation for the exercise of his right to

free speech, (2) under the Eighth Amendment to the United

States Constitution, alleging that the defendants' conduct

amounted to cruel and unusual punishment, (3) for a violation

of equal protection, alleging that the defendants

discriminated against him on account of race, (4) under the

Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 1346(b), 2671-

2680, alleging that the defendants' acts and omissions were

tortious under federal law, (5) under 42 U.S.C. § 1981,

alleging that the defendants engaged in acts of

discrimination, harassment, and intimidation that violated

his civil rights under color of federal law, (6) for

equitable relief pursuant to Federal Rule of Civil Procedure

65 seeking to enjoin defendant Andrikos from engaging in

actions, including but not limited to, Eighth Amendment

violations, abuse of authority, and unlawful intimidation,

---

[1] The defendants note in their Memorandum that Officers Neely and Marchase have been incorrectly named in the complaint as "C.O. Neely" and "C.O. Marchaze."  This Opinion refers to both officers by the names the defendants report as accurate.

and (7) unspecified relief under the Fifth, Sixth, and Ninth Amendments to the United States Constitution.

The defendants have moved to dismiss, or, in the alternative, for summary judgment. No discovery has occurred in this case. The defendants argue, among other things, that the Court lacks subject matter jurisdiction over constitutional claims brought against BOP employees in their official capacities, that many of the events cited by the plaintiff in support of his claims are barred by the statute of limitations, that the plaintiff failed to exhaust his administrative remedies with respect to many of his constitutional and statutory claims, that many of the defendants lack the personal involvement required to support a constitutional claim, that the plaintiff failed to allege a constitutional violation, that the defendants are entitled to qualified immunity, and that the plaintiff has failed to establish the necessary requirements for a preliminary injunction.

The plaintiff opposes the defendants' motions in a paper that he describes as a motion for summary judgment. Because both parties have provided the Court with affidavits and exhibits in support of their motions that go beyond the information provided in the pleadings, the motions are considered to be motions for summary judgment.

# I.

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. See Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat. Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or

on contentions that the affidavits supporting the motion are not credible." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993); <u>see also</u> <u>Scotto v. Almenas</u>, 143 F.3d 105, 114-15 (2d Cir. 1998); <u>Singh v. New York City Off-Track Betting Corp.</u>, No. 03 Civ. 5238, 2005 WL 1354038, at *1 (S.D.N.Y. June 8, 2005).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion. <u>See</u> <u>McPherson v. Coombe</u>, 174 F.3d 276, 279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'") (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. <u>See</u> <u>McPherson</u>, 174 F.3d at 281; <u>Vital v. Interfaith Med. Ctr.</u>, 168 F.3d 615, 620-21 (2d Cir. 1999); <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir. 1996); <u>Ruotolo v. IRS</u>, 28 F.3d 6, 8 (2d Cir. 1994); <u>Graham v. Lewinski</u>, 848 F.2d 342, 344 (2d Cir. 1988). Express notice of a failure to respond was provided to the plaintiff, and the plaintiff did file a timely response to the defendants' motion for summary judgment.

**II.**

**A.**

The facts in this case are undisputed for the purpose of
this motion unless otherwise noted.  On December 18, 1995,
the plaintiff was sentenced in the United States District
Court for the Eastern District of Pennsylvania to 180 months
imprisonment and five years of supervised release for bank
robbery, in violation of 18 U.S.C. §§ 2113(a) and 2;
conspiracy to commit bank robbery in violation of 18 U.S.C. §
371; and armed bank robbery in violation of 18 U.S.C. §
2113(d).  (Defendants' Statement of Undisputed Facts Pursuant
to Local Civil Rule 56.1 ("Defendants' Stmt."), ¶ 1;
Plaintiff's Statement of Undisputed Facts Pursuant to Local
Civil Rule 56.1 ("Plaintiff's Stmt."), ¶ 5; Complaint, ¶ 18.)

**B.**

As part of the sentence, the district court ordered the
plaintiff to pay $170,750 in restitution and $150 in special
assessments.  The restitution was to be paid during the
period of the plaintiff's imprisonment and supervised release
in accordance with a schedule of payments approved by the
United States Probation Office and based on the plaintiff's
ability to pay.  (Defendants' Stmt., ¶ 2; Plaintiff's Stmt.,
¶ 6; complaint ¶ 19.)  The plaintiff arrived at FCI Otisville

on October 25, 2000 from another facility.  (Defendants'
Stmt., ¶ 6; Plaintiff's Stmt., ¶ 10.)

    Based on his financial status and outstanding
obligations, the plaintiff's "Unit Team" (including Andrikos
and Walicki) determined that it would be appropriate for him
to pay $35 per month toward his restitution through the
Inmate Federal Responsibility Program ("IFRP").  (Defendants'
Stmt., ¶ 7); Complaint, ¶ 21.)  The plaintiff disputes that
this payment schedule was "appropriate."  (Plaintiff's Stmt.,
¶ 11.)  The plaintiff advised Andrikos that in a previous
correctional facility he had only been asked to contribute
$25 per quarter, and he requested continuation of this
arrangement.[2]  (Complaint, ¶ 23.)  When Andrikos denied this
request, the plaintiff refused to participate in IFRP at a
rate of $35 per month and was consequently placed on "refusal
status."[3] (Defendants' Stmt., ¶ 8; Plaintiff's Stmt., ¶ 12
Complaint, ¶¶ 22, 25.)

    After the plaintiff was placed on refusal status, the
plaintiff made numerous informal and formal requests seeking

---

[2] The plaintiff presented Andrikos with a copy of United States v.
Mortimer, 94 F.3d 89 (2d Cir. 1996), which he believed prohibited the Unit
Team's demand. (See Complaint, ¶ 24.)

[3] Being placed on "refusal status" limits the prisoner's privileges; it
results in inferior housing, community activity restrictions, and
ineligibility for residential drug treatment programs.  (See Complaint, ¶
22.)

an administrative remedy.[4]  On October 26, 2001, the plaintiff

filed BP-9 # 252380-F1, in which he challenged his Unit

Team's decision to increase the amount of restitution he

would have to pay under IFRP and threatened a civil suit if

no solution could be reached.  (Defendants' Stmt., ¶ 9;

Plaintiff's Stmt., ¶ 13; Complaint, ¶ 27; Ex. E to Decl. of

Adam M. Johnson dated Sept. 16, 2005 ("Johnson Decl.").)  In

his BP-9, the plaintiff also alleged that he had witnessed

Walicki and Andrikos participate in "racial intimidation,

extortion, and bribery."  (Complaint, ¶ 27.)  Defendant

Knoblauch rejected this request due to the plaintiff's

failure to attempt informal resolution[5] and instructed the

plaintiff to re-file within five days.  (Defendants' Stmt., ¶

10.)  The plaintiff subsequently filed two informal BP-8s

making the same allegations as his prior BP-9; however, both

forms were rejected on the ground that there was no cause for

---

[4] The available administrative remedies consist of a four-step set of
procedures set forth in the BOP's Administrative Remedy Program, 28 C.F.R
§ 542, which include: (1) attempting informal resolution with prison staff
(Form BP-8); (2) submitting a formal written "Administrative Remedy
Request" (Form BP-9) within 20 days of the date of the event that is the
basis for the request; (3) appealing the warden's decision to the
appropriate Regional Director within 20 days of the formal request being
denied (Form BP-10); and (4) appealing the Regional Director's decision to
the BOP General Counsel's office within 30 days of the date of the
Regional Director's response (Form BP-11).  See 28 C.F.R. §§ 542.13(a),
542.14(a), 542.15(a).

[5] The plaintiff alleges that he chose to bypass "informal resolution"
because the BP-8s were supposed to be filed with the inmate's Unit Team,
which in this case was the target of the plaintiff's complaint.  The
plaintiff further alleges that Knoblauch accepted the BP-9 precisely
because the complaint was directed against the plaintiff's Unit Team
(Plaintiff's Stmt., ¶ 14.)

the claims.  (Complaint, ¶¶ 30-31.)  On November 8, 2001, the
plaintiff resubmitted the formal request but it was rejected
again due to untimeliness.  (Defendants' Stmt., ¶ 11.)  The
plaintiff asserts that the request was not rejected for
untimeliness but for another procedural reason.  (Plaintiff's
Stmt., ¶ 15.)

On November 7, 2001, the plaintiff filed BP-9 # 253311-
F1, in which he alleged that the IFRP plan for $35 per month
was unlawful, that the resulting limitation on his privileges
because of his IFRP refusal was "extortion," and that
defendants Walicki and Andrikos were racially biased and
conspired against him.  (Defendants' Stmt., ¶ 12; Plaintiff's
Stmt., ¶ 16; Ex. G to Johnson Decl.)  On November 26, 2001,
Menifee denied this request on the ground that a $35 per
month payment was appropriate given the plaintiff's financial
status and there was no evidence to support his allegations
about staff members abusing their authority.  (Defendants'
Stmt., ¶ 13; Plaintiff's Stmt., ¶ 17.)

On December 7, 2001, the plaintiff filed a BP-10 to
appeal Menifee's decision.  The BP-10 contained the same
allegations, but added the allegation that prison staff
members, including defendants Menifee, Knoblauch, and
Wynkoop, were hindering the administrative remedy process by
failing to return some of his paperwork to him.  (Defendants'

Stmt., ¶ 14; Plaintiff's Stmt., ¶ 18; Ex. H to Johnson Decl.)
Regional Director Ray denied the BP-10, finding that the
decision to increase IFRP payments was fair and appropriate,
and that the plaintiff provided no evidence of hindrance in
the administrative remedy process. (Defendants' Stmt., ¶ 15;
Ex. H to Johnson Decl.) The plaintiff contends that Ray
failed to conduct an investigation. (Plaintiff's Stmt. ¶
19.)

On February 5, 2002, the plaintiff filed a BP-11 based
on the same allegations in the previous appeal. (Defendants'
Stmt., ¶ 16; Plaintiff's Stmt., ¶ 20; Ex. I to Johnson Decl.)
Defendant Watts, the Administrator of National Inmate
Appeals, denied the appeal on December 3, 2002, stating that
the plaintiff's failure to pay $25 per quarter justified the
sanctions against him. (Defendants' Stmt., ¶ 17; Plaintiff's
Stmt., ¶ 21; Ex. I to Johnson Decl.) An amended response was
issued on January 14, 2003, correcting the amount that the
plaintiff refused to pay to $35 per month toward restitution.
(Ex. I to Johnson Decl.)

In February 2003, the plaintiff filed a motion before
the sentencing court seeking to vacate the court's
restitution order. (Defendants' Stmt., ¶ 19; Plaintiff's
Stmt., ¶ 23.) On April 24, 2003, the district court issued
an order directing the plaintiff to pay $20 per year toward

his restitution order while incarcerated or unemployed. (Defendants' Stmt., ¶ 20; Plaintiff's Stmt., ¶ 24.) The plaintiff alleges that he suffered a stroke in May 2003. The plaintiff alleges that the stroke was precipitated by the stress from the defendants' actions and his constant fear of reprisal. (Complaint, ¶ 60.) The plaintiff further alleges that the stroke caused permanent damage to his voice and left him permanently disabled for more than six weeks. (Id.) The plaintiff was taken off refusal status on May 5, 2003. (Defendants' Stmt., ¶ 21; Plaintiff's Stmt., ¶ 25.)

## C.

On or about July 15, 2003, the plaintiff alleges that he was removed from the general population and placed in the Special Housing Unit ("SHU"). (Complaint, ¶ 62.) He alleges that an incident report asserts that he was placed in SHU for assisting another inmate who had participated in a fight. (Id.) The plaintiff maintains that he did not engage in any conduct amounting to this charge. (Complaint, ¶ 63.) While being transferred to and held in SHU, the plaintiff alleges that he was handcuffed and locked in a small room, that he was a victim of theft, food tampering, harassment, and unjustified limitation of his recreation period. (Complaint, ¶¶ 64-66.) The plaintiff alleges that Banks and Neely laughed at him. (Complaint ¶ 65.) The plaintiff further

alleges that while Menifee was making his weekly rounds of
SHU, the plaintiff demanded to know why he was still awaiting
disposition of the incident report.  According to the
plaintiff, Menifee sarcastically rebuffed his question.
(Complaint, ¶ 67.)  The next morning, the plaintiff was
released from SHU with no disciplinary finding made against
him and he was given no opportunity for a disciplinary
hearing.  (Complaint, ¶ 68.)

**D.**

On or about November 3, 2004, the plaintiff filed BP-9 #
358842-F1, alleging that Marchase harassed and retaliated
against him for filing administrative complaints.[6]
(Defendants' Stmt., ¶ 22; Plaintiff's Stmt., ¶ 26; Ex. K to
Johnson Decl.)  The request was denied on the grounds that
the plaintiff's facts were either implausible or
unsubstantiated.  (Defendants' Stmt., ¶ 23; Plaintiff's
Stmt., ¶ 27.)  On or about November 16, 2004, the plaintiff
filed another BP-8 describing Marchase's alleged harassment.
The BP-8 was answered by Walicki who found no basis for the
complaint.  (Complaint, ¶ 76.)

On December 22, 2004, the plaintiff filed a BP-10

---

[6] This alleged harassment and retaliation included taking the plaintiff's
sneakers, tampering with the plaintiff's food, and preventing the
plaintiff from purchasing stamps by detaining him.  The plaintiff also
alleged that he was told that Marchase showed the plaintiff's BP-8 forms
to white inmates supposedly to "start a conflict" between the plaintiff
and white inmates.  (Ex. K to Johnson Decl.)

13

which reiterated the issues raised in the previous complaint and added an allegation that Knoblauch and Walicki had conspired to lose or delay processing of his previous BP-9. (Defendants' Stmt., ¶ 24; Plaintiff's Stmt., ¶ 28; Ex. L to Johnson Decl.)  The Regional Office indicated that the allegations concerning the "stamp incident" were being investigated; however, the Regional Office declined to reach the other issues raised in the BP-10 because of their untimeliness and the plaintiff's failure to raise them in his prior BP-9.  (Defendants' Stmt., ¶ 25; Plaintiff's Stmt., ¶ 29; Ex. L to Johnson Decl.)  On February 10, 2005, the plaintiff filed a BP-11 raising the same issues, and the Central Office responded that the allegations had been referred for investigation.  (Ex. M to Johnson Decl.)

On December 6, 2004 the plaintiff filed BP-9 # 361010-F1 alleging that Marchase had engaged in racially discriminatory and retaliatory actions when he searched the plaintiff and "no one else" and had forced the plaintiff to return to his cell.  (Defendants' Stmt., ¶ 26; Plaintiff's Stmt., ¶ 30; Ex. N to Johnson Decl.)  Warden Menifee denied this request on the ground that the plaintiff had failed to demonstrate that the challenged actions resulted from retaliation or racial bias.  (Ex. N to Johnson Decl.)  On January 6, 2005, the plaintiff filed a BP-10 appeal to the Regional Office and the

appeal was denied.  (Defendants' Stmt., ¶ 28; Plaintiff's
Stmt., ¶ 32; Ex. O to Johnson Decl.)  On February 22, 2005
the plaintiff filed a BP-11 appeal to the central office on
the same ground and the appeal was similarly denied.
(Defendants' Stmt., ¶ 29; Plaintiff's Stmt., ¶ 33; Ex. P to
Johnson Decl.)

It is undisputed that the plaintiff has not filed any
administrative tort claims with the BOP.  (Defendants' Stmt.,
¶ 30; Plaintiff's Stmt., ¶ 34.)

**E.**

On July 11, 2005 the plaintiff requested by letter that
this Court "place an injunction and restraining order against
defendant Andrikos."  The plaintiff based his request on
events arising out of an institutional lockdown at FCI
Otisville on July 6, 2005.  (Plaintiff's Letter to Assistant
United States Attorney Kristin L. Vassallo dated July 11,
2006 ("Vassallo Letter"), at 1.)  On the morning of July 6,
2005 the plaintiff alleges that he was removed from his cell
to be interviewed.  The plaintiff alleges that he noticed
Andrikos standing outside his cell when he was removed.  The
plaintiff further alleges that when he returned to his cell,
Andrikos was searching the cell without supervision.  The
plaintiff subsequently discovered that his "breakfast bag"
had been tampered with.  (Vassallo Letter, at 2.)  The

plaintiff concedes that while he is not certain that Andrikos committed this act, he generally objects to Andrikos' unsupervised search of his cell.  (Id.)

On August 4, 2005, the plaintiff signed an affidavit in support of a preliminary injunction and temporary restraining order that complained about abuse of authority, improper threats, extortion, and deprivation of rights under the Eighth Amendment.  The Court denied the plaintiff's request for a temporary restraining order on August 12, 2005.

### III.

### A.

The plaintiff alleges that all twelve named defendants have violated his constitutional rights while operating in their personal and official capacities as BOP employees.  The defendants argue that this Court lacks subject matter jurisdiction over constitutional claims against BOP employees in their official capacities.  Therefore, the defendants move for summary judgment with respect to the plaintiff's constitutional claims against them in their official capacities.  The plaintiff does not respond to this argument in his cross motion for summary judgment.

The United States is "immune from suit save as it consents to be sued... and the terms of its consent to be sued in any court define that court's jurisdiction to

entertain the suit." United States v. Mitchell, 445 U.S.
535, 538 (1980) (internal citation omitted). An action for
damages against a federal officer in the officer's official
capacity is essentially a suit against the United States, and
is barred by sovereign immunity unless such immunity is
waived. See Robinson v. Overseas Military Sales Corp., 21
F.3d 502, 510 (2d Cir. 1994) (citing FDIC v. Meyer, 510 U.S.
471 (1994)). In this case there has been no waiver of
sovereign immunity.

In Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized
a private cause of action for damages against a federal
official operating in his personal capacity for violating the
Constitution. Bivens, however, does not imply a waiver of
sovereign immunity with respect to constitutional claims that
are brought against federal officials acting in their
official capacity. See Robinson, 21 F.3d at 510. Because
the plaintiff did not obtain a waiver of sovereign immunity,
this Court lacks subject matter jurisdiction over the claims
against the defendants in their official capacity.
Therefore, the defendants' motion for summary judgment is
granted with respect to the plaintiff's constitutional claims
against the defendants in their official capacity.

The defendants move for summary judgment on many of the plaintiff's <u>Bivens</u> claims on the ground that they are barred by the statute of limitations.[7]  The statute of limitations for a <u>Bivens</u> claim arising in New York is three years.  <u>See</u> <u>Tapia-Ortiz v. Doe</u>, 171 F.3d 150, 151 (2d Cir. 1999) (citing <u>Owens v. Okure</u>, 488 U.S. 235, 251 (1989)).  The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that forms the basis of his claim.  <u>See</u> <u>Hayes v. Federal Bureau of Investigation</u>, 562 F.Supp. 319, 323 n.4 (S.D.N.Y. 1983) (citing <u>Barret v. United States</u>, 689 F.2d 324, 333 (2d Cir. 1982)).

It is undisputed that the present complaint was signed and dated on January 11, 2005.[8]  Therefore, the defendants argue that the plaintiff may only bring suit for claims related to events that occurred on or after January 11, 2002. Because many of the plaintiff's claims arise out of events that occurred before January 11, 2002, and because the plaintiff became aware of those events immediately after they occurred, they cannot be addressed in this litigation.  In

---

[7] The statute of limitations is the same for <u>Bivens</u> claims and claims under 42 U.S.C. § 1983.  <u>See</u> <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987).

[8] The statute of limitations usually ceases to run when a complaint is filed, but a prisoner is given the benefit of the date that the pleading was givens to prison officials. <u>See</u> <u>Dory v. Ryan</u>, 999 F.2d 679, 682 (2d Cir. 1993), <u>modified on other grounds</u>, 25 F.3d 81 (2d Cir. 1994).

response, the plaintiff asserts that the statute of
limitations should be tolled for the events that occurred
before January 11, 2002 because they were part of a "racial
conspiracy" that continued after that date.  Therefore, the
plaintiff argues that all of the allegations in the complaint
are actionable in this litigation.  The plaintiff's claim is
without merit.

The Second Circuit Court of Appeals has rejected
plaintiffs' attempts to toll a statute of limitations on
Bivens claims based on an allegation of a conspiracy.  See
Pinaud v. County of Suffolk, 52 F.3d 1139, 1156-57 (2d Cir.
1995).  The plaintiff's allegations of a conspiracy are
conclusory, vague and, without specific factual support.  See
id. at 1156.

In any event, the Court of Appeals in Pinaud found that:
"the existence of a conspiracy does not postpone the accrual
of causes of action arising out of the conspirators' separate
wrongs... [W]hen a plaintiff knows or ought to know of an
actionable wrong, the statute of limitations starts to run
and the later awareness that the actionable wrong was also
part of a greater conspiracy does not expand the statutory
time limit."  Id. at 1156-57 (internal citation and quotation
marks omitted).  In this case, it is undisputed that the
plaintiff was immediately aware of the events underlying his

IFRP claim and the events relating to the processing of his administrative complaints. The plaintiff cannot rely on a conclusory, uncorroborated claim of a greater "racial conspiracy" to excuse retrospectively his failure to bring suit within the three-year time limit. As a result, the defendants' motion for summary judgment is granted for all of the plaintiff's claims arising from events that occurred before January 11, 2002. This includes the initial decision to increase the plaintiff's IFRP payments, the plaintiff's initial placement on refusal status, and the processing of his 2001 administrative complaints. In addition, because Wynkoop has only been implicated during this excluded time period, Wynkoop's motion for summary judgment is granted in its entirety.

## C.

The defendants also move for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies with respect to many of the individual defendants and claims. Under the Prison Litigation Reform Act ("PLRA"): "No action shall be brought with respect to prison conditions... by a prisoner... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Therefore, before an inmate can bring a Bivens action in district court, he must have exhausted all

available administrative remedies.  See Porter v. Nussle, 534
U.S. 516, 524-525 (2002); Thomas v. Ashcroft, No. 02 Civ.
5726, 2004 WL 1444735, at *7 (S.D.N.Y. June 25, 2004).

The defendants claim that the plaintiff has not
exhausted his administrative remedies with respect to
defendants Ray, Watts, Wilner, Henry, Banks and Neely because
he failed to file any formal requests for administrative
remedies or appeals with respect to the conduct of these six
defendants.[9]  The plaintiff also failed to file administrative
remedy requests for the following alleged incidents named in
his complaint: (1) that he was the subject of a false
incident report, (2) that he was improperly placed in SHU,
(3) that he was locked in a closet and small room while
handcuffed, and (4) that he did not receive a disciplinary
hearing.  (See Complaint, ¶¶ 62-3, 65, 67-68.)

The plaintiff has failed to justify his failure to
exhaust his administrative remedies.  First, the plaintiff
argues that the numerous administrative remedy requests that
he did file are broad enough to cover the aforementioned
allegations for the purpose of the PLRA exhaustion
requirement.  This contention is without merit.  In order to

---

[9] While the plaintiff did file a BP-8 for informal resolution with Henry,
that is insufficient to exhaust available administrative remedies.  See
Rivera v. United States, No. 91 Cr. 595, 2000 WL 1277339 (S.D.N.Y. Sept.
8, 2000).  The plaintiff did not pursue the available remedies by filing a
BP-9 or pursuing appeals through the filing of a BP-10 or BP-11 relating
to Henry.

exhaust a claim for PLRA purposes, inmates "must provide enough information about the conduct of which they complain [in their administrative claim] to allow prison officials to take appropriate responsive measures."  Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004); Turner v. Goord, 376 F.Supp.2d 321, 325 (W.D.N.Y 2005).  None of the plaintiff's administrative remedy requests provided sufficient information that would have allowed BOP personnel to address the complaints identified above.

     The plaintiff contends that the supervisory roles of Ray and Watts provide an excuse for lack of exhaustion.  This argument is without merit.  To support this proposition, the plaintiff relies on the Federal Bureau of Prisons Program Statement No. 1330.13 (Dec. 22, 1995).[10]  Under 1330.13(13)(b), "matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision."  The plaintiff argues that he did not name Ray and Watts in any of the administrative remedy requests because they cannot be responsible for adjudicating a claim against themselves, and because Ray and Watts "supervise" BOP personnel who would initially adjudicate the complaints.  The defendants respond

---

[10] The Program Statement outlines the purpose, personnel responsibilities, and procedural rules concerning the Administrative Remedy Program.

that Ray and Watts do not actually "supervise" the BOP staff initially responsible for investigating complaints. In addition, the defendants assert that construing 1330.13(13)(b) as an exception to the exhaustion requirement would allow a prisoner to sue a high ranking prison official without filing any administrative claim. The plaintiff's argument does not excuse his failure to name Ray and Watts in any administrative complaint. The purpose of 1330.13(13)(b) is to prevent supervisors from insulating themselves from liability or intimidating their inferiors. The plaintiff never attempted to pursue any administrative remedy at any level with respect to Ray and Watts, and thus failed to provide the BOP the opportunity to assure that his complaints were investigated. He thus failed to exhaust his administrative remedies against Ray and Watts.

Accordingly, because the plaintiff failed to exhaust his administrative remedies, the defendants' motion for summary judgment is granted for all of the plaintiff's claims against Ray, Watts, Banks, Wilner, Henry, and Neely. For the same reason, the defendants' motion for summary judgment is granted for the plaintiff's claims concerning the "false" incident report, the plaintiff's placement in SHU, the alleged detention in a closet or small room, and the lack of a disciplinary hearing.

**D.**

The defendants also argue that the claims against Watts, Ray, Wilner, and Menifee ("the supervisors") must be dismissed because they had no personal involvement, which is required to substantiate a <u>Bivens</u> claim.  A supervisor can be found liable for a constitutional violation only if the defendant: "(1) directly participated in the violation; (2) failed to remedy the violation after learning about it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning about it; or (4) was grossly negligent in supervising subordinates who caused the violation." <u>Sealey v. Giltner</u>, 116 F.3d 47, 51 (2d Cir. 1997) (quoting <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Judges in this district have found that a supervisor's mere denial of a grievance is insufficient to establish personal involvement; otherwise, senior administrative officials could generally be named as defendants in prison condition cases.  <u>Lyerly v. Phillips</u>, No. 04 Civ. 4904, 2005 WL 1802972, at *7 (S.D.N.Y. July 29, 2005); <u>Foreman v. Goord</u>, No. 02 Civ. 7089, 2004 WL 1886982, at *7-8 (S.D.N.Y. Aug. 23, 2004); <u>Joyner v. Greiner</u>, 195 F.Supp.2d 500, 506 (S.D.N.Y.

2002); Atkins v. County of Orange, 251 F.Supp.2d 1225, 1234
(S.D.N.Y. 2000).

It is unnecessary to decide whether there are sufficient
allegations of personal involvement by Watts, Ray, and Wilner
because the claims against them must be dismissed in any
event for failure to exhaust administrative remedies with
respect to those defendants.

The claims of retaliation and racial discrimination
detailed below cannot be dismissed at this preliminary stage
against Menifee.  The plaintiff has sufficiently alleged
Menifee's personal knowledge of various charges against
Marchase and his failure to correct the violations.  The
plaintiff has also alleged that Menifee created a prison-wide
policy that fostered the violations.  Whatever the ultimate
merit of the allegations, they cannot be dismissed at this
preliminary stage of the case.

**E.**

The defendants also move for summary judgment on the
ground that the plaintiff has failed to allege a
constitutional violation.  Specifically, the defendants argue
that the plaintiff's claims regarding IFRP do not implicate
any constitutional rights, and that the plaintiff has failed
to state a claim for retaliation under the First Amendment or
a claim for racial discrimination in violation of the

plaintiff's right to equal protection.  The plaintiff moves

for summary judgment on the grounds that the defendants' IFRP

requests were unconstitutional, that the "punishments" he

received for refusing to participate in IFRP amounted to

cruel and unusual punishment under the Eighth Amendment, that

the defendants retaliated against him for exercising his

First Amendment right to free speech by filing administrative

complaints, and that Marchase discriminated against him on

account of his race in violation of his right to equal

protection.[11]

**1.**

The plaintiff claims that his constitutional rights were

violated when he was placed on refusal status after he

declined to pay additional money each month toward his IFRP

obligations.  The argument is without merit.  In Johnpoll v.

Thornburgh, 898 F.2d 849, 851 (2d Cir. 1990) (per curiam),

the Court of Appeals for the Second Circuit held that the

IFRP provides a means by which inmates can learn financial

responsibility by contributing toward their outstanding

debts.  The Court of Appeals held that "the IFRP program

serves valid penological interests and is fully consistent

---

[11] The right to equal protection of the laws, which is contained explicitly
in the Fourteenth Amendment as a protection against action by state
officials, also applies to actions by federal officials under the Fifth
Amendment.  See, e.g., Bolling v. Sharpe, 347 U.S. 497, 500 (1954); Skelly
v. INS, 168 F.3d 88, 91 (2d Cir. 1999); Furlong v. Shalala, 156 F.3d 384,
392 (2d Cir. 1998).

with the Bureau of Prisons' authorization... to provide for
rehabilitation and reformation." Johnpoll, 898 F.2d at 851.
Furthermore, "compelled participation is not punitive
because... it [is] reasonably related to a legitimate
government objective of rehabilitation. Id. (citing Bell v.
Wolfish, 441 U.S. 520, 539 (1979)).

Thus, the plaintiff's claim that he was
unconstitutionally required to pay more toward IFRP than he
was accustomed to is without merit. The BOP is given broad
discretionary authority to carry out the legitimate
government objective of rehabilitation. See Graham v.
Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Because the
plaintiff has failed to demonstrate how his financial status
and outstanding obligations necessitated a lower monthly
payment, the defendants' request was not an abuse of their
discretionary authority or contrary to the legitimate
government objective of rehabilitation.

Furthermore, the plaintiff's claim that his placement on
refusal status was unconstitutional is also without merit.
While the defendants concede that placement on refusal status
does result in the loss of certain privileges, a prisoner
does not have a constitutional entitlement to these

privileges.[12]  See Williams v. Farrior, 334 F.Supp.2d 898, 904
(E.D. Va. 2004); Solis v. Menifee, No. 99 Civ. 9072, 2000 WL
1401633, at *2 (S.D.N.Y. Sept. 25, 2000); Karacsonyi v.
Radloff, 885 F.Supp. 368, 370 (N.D.N.Y. 1995).  Therefore,
the plaintiff's constitutional claims regarding any loss of
privileges due to IFRP refusal fail as a matter of law.

The plaintiff also alleges that his constitutional
rights were violated when the defendants ignored the decision
in United States v. Mortimer, 94 F.3d 89 (2d Cir. 1996).  The
plaintiff's reliance on Mortimer is misplaced.  Mortimer held
that the district court violated its statutory obligation to
determine the restitution payment schedule by delegating that
task to the Bureau of Prisons.  The remedy granted in
Mortimer was to vacate the sentence and remand for
resentencing.  Mortimer did not hold that delegation of the
determination of the payment schedule to the BOP was a
constitutional violation.  In this case, the plaintiff has
already received the relief dictated by Mortimer because the
trial court has vacated the order of restitution and
specified an IFRP payment of $20 per year.  Because Mortimer
did not find that delegation of the determination of the
restitution payment schedule of the BOP was unconstitutional,
Mortimer cannot serve as a basis for a Bivens claim against

---

[12] See Complaint, ¶ 22 for a list of the restricted privileges.

individual BOP officials administering that program.
Consequently, the defendants' motion for summary judgment is
granted on the plaintiff's claims that his IFRP requirements
and his placement on refusal status were unconstitutional.

The plaintiff argues that his placement on refusal
status violated his Eighth Amendment right to protection from
cruel and unusual punishments.  It is well established that
prison officials cannot deprive prisoners of certain
essential attributes of humane conditions of confinement such
as adequate food, clothing, shelter, and medical care.
Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In order to
establish a claim under the Eighth Amendment, a prisoner must
demonstrate that a prison official's conduct was
"sufficiently serious" and that the official acted (or failed
to act) with a "sufficiently culpable state of mind."  Id. at
834; Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2000)
(per curiam).

The plaintiff's allegations regarding his loss of
privileges because of his refusal status do not allege an
objectively sufficiently serious deprivation that rises to
the level of a deprivation of "the minimal civilized measure
of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347
(1981).  Courts have consistently held that denial of
privileges such as those at issue in the IFRP refusal do not

constitute cruel and unusual punishment.  See, e.g., Delisser
v. Goord, No. 02 CV 0076, 2003 WL 133271, at *6 (N.D.N.Y.
Jan. 15, 2003); Graham v. Perez, 121 F.Supp.2d. 317, 323
(S.D.N.Y. 2000).  The plaintiff has failed to allege any
extraordinary practices by BOP employees or unusual injuries
that call these standard practices into question.  Therefore,
the defendants' motion for summary judgment on the
plaintiff's Eighth Amendment claim is granted.

**2.**

The defendants move for summary judgment on the ground
that the plaintiff has failed to provide a sufficient factual
basis to state a retaliation claim.  The plaintiff claims
that his First Amendment rights were violated.  Specifically,
the plaintiff claims that he was the victim of retaliation
for refusing to participate in IFRP, for challenging his
placement on refusal status in administrative complaints, and
for filing administrative complaints against BOP personnel.
(Complaint, ¶¶ 62-80.)  He appears to assert this claim
against Marchase, Neely, and Banks.

To establish a prima facie case of First Amendment
retaliation, the plaintiff must establish "(1) that the
speech or conduct at issue was protected; (2) that the
defendant took adverse action against the plaintiff; and (3)
that there was a causal connection between the protected

speech and the adverse action." Dawes v. Walker, 239 F.3d
489, 492 (2d Cir. 2001), overruled on other grounds,
Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

The plaintiff alleges that his privileges were
restricted in retaliation for refusing to participate in
IFRP, including arbitrary confinement in SHU, and that
Marchase retaliated against him on numerous occasions.
The plaintiff alleges that these events were all a result of
the administrative grievances he filed against BOP officials
and for filing a motion to vacate his sentence. In addition,
the plaintiff alleges that Menifee was aware of this
harassment and retaliation and failed to correct it.

It is well established that the filing of prison
grievances and motions are constitutionally protected
activities. Graham, 89 F.3d at 80; Salahuddin v. Mead, 05
Civ. 8581, 2002 WL 1968329, at *3 (S.D.N.Y. Aug. 26, 2002).
Therefore, the plaintiff has satisfied the first prong of the
test under Dawes.

With respect to the second prong of the Dawes test, the
Court of Appeals for the Second Circuit has held that "[o]nly
retaliatory conduct that would deter a similarly situated
individual of ordinary firmness from exercising his or her
constitutional rights constitutes an adverse action for a
claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d

Cir. 2003) (citing Dawes, 239 F.3d at 493). "Otherwise the
retaliatory act is simply de minimis and therefore outside
the ambit of constitutional protection." Id. To determine
whether retaliatory acts are de minimis, "the court's inquiry
must be 'tailored to the different circumstances in which
retaliation claims arise,' bearing in mind that "[p]risoners
may be required to tolerate more... than average citizens,
before a [retaliatory] action taken against them is
considered adverse." Davis v. Goord, 320 F.3d at 353 (quoting
Thaddeus -X *v*. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)).
"Thus, in retaliation actions by prisoners, courts have found
that a range of potentially retaliatory acts by prison
officers are legally insufficient to state a retaliation
claim." Salahuddin, 2012 WL 1968329, at *4 (collecting cases
of de minimis acts of retaliation not held to be actionable).

Most of the plaintiff's allegations about the
defendants' alleged conduct are insufficient to support a
claim of retaliation in violation of the First Amendment.
First, the punitive measures related to the plaintiff's
refusal to participate in IFRP are constitutional. Thus, any
limitations of the plaintiff's privileges related to IFRP
refusal cannot be considered "adverse actions" to satisfy a
constitutional retaliation claim. Moreover, there is no
showing that there is any causal relation between the

particulars of the plaintiff's refusal status and the assertion of any First Amendment rights.  There is no allegation that the particulars of the plaintiff's refusal status differed from the particulars of any other inmate who refused to participate in IFRP.

Second, the plaintiff's complaints about confinement in SHU are barred because he failed to exhaust his administrative remedies with respect to that claim.

Third, the plaintiff asserts that Marchase's conduct constituted "adverse actions" that were designed to deter him from exercising his First Amendment rights and that Menifee failed to take affirmative steps to investigate or prevent these adverse actions.  Many of the actions alleged against Marchase do not survive review under the de minimis standard, such as Marchase's alleged theft of the plaintiff's sneakers, his opening a bag of the plaintiff's potato chips, and requiring him to go to the "leisure center."  However, some of the plaintiff's allegations against Marchase cannot be dismissed on a motion for summary judgment before discovery. In particular, the plaintiff has alleged that, as a result of prior administrative complaints filed by the plaintiff, Marchase searched him without consent and Marchase showed the plaintiff's confidential BP-8 complaint to white inmates in an effort to start a conflict with the plaintiff.  (See Ex.

K-N to Johnson Decl.) This alleged conduct is sufficiently serious and allegedly related to the exercise of First Amendment rights that summary judgment cannot be granted in favor of Marchase on this claim. Similarly, to the extent that Menifee was aware of this conduct and failed to correct it, summary judgment cannot be granted in favor of Menifee on this claim.[13]

The defendants have not listed any material undisputed facts relating to these events in their 56.1 Statement, nor have they submitted any affidavits alleging that the incidents did not happen. The defendants' 56.1 Statement points to the fact that these events were the subject of administrative complaints that were denied by Menifee. But that does not establish that the events did not occur or that there are no disputed issues of material fact with respect to the events. The defendants can of course submit a subsequent motion for summary judgment concerning the substance of the alleged incidents of retaliation.

**3.**

The defendants move for summary judgment dismissing the plaintiff's claim that he was denied equal protection because he was allegedly discriminated against on the basis of race.

_____

[13] To the extent that the plaintiff attempted to assert a retaliation claim against Neely and Banks, the claim is dismissed because the plaintiff failed to exhaust administrative remedies. The plaintiff has also failed to make out a prima facie case of retaliation against Neely and Banks.

The plaintiff claims that Marchase engaged in racially discriminatory conduct and that Menifee was aware of this conduct and failed to remedy it.

To state a claim for an equal protection violation, a prisoner must demonstrate "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.... He must also show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not reasonably related to any legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted). As the Court of Appeals has noted: "[The plaintiff] alleges that he and other minorities were subject to disparate treatment because of their race... we cannot imagine a legitimate penological reason for the conduct alleged." Id. at 130.

The plaintiff alleges two primary instances of racial discrimination. First, in the plaintiff's October 26, 2001 and November 7, 2001 BP-9s, the plaintiff alleged that he witnessed Walicki and Andrikos participate in "racial discrimination, extortion, and bribery," and that the limitations on his privileges due to IFRP refusal were

racially motivated.  Any claims arising out of these alleged events are barred by the statute of limitations.  Because the allegations contained in the above-mentioned BP-9s occurred prior to January 11, 2002, any claim for a violation of the plaintiff's right to equal protection based on these allegations is time-barred.

Second, as explained above, the plaintiff alleged in his November 3, 2004 and December 6, 2004 BP-9s that he was subject to racial discrimination when Marchase searched him without cause, when Marchase ordered him to go back to his cell on various occasions, and when Marchase showed "white inmates" the contents of his administrative complaints.  (See Ex. K-N to Johnson Decl.)  While the defendants argue that the plaintiff has not argued that the plaintiff was treated differently because of his race, his complaints do in fact allege racial discrimination.

Similarly, the claim cannot be dismissed against Menifee because Menifee was aware of the allegations and allegedly failed to take any actions to correct the situation.[14]

**4.**

The defendants move for summary judgment on all of the plaintiff's constitutional claims on the ground the

---

[14] As explained above, these incidents were not the subject of any allegations in the defendants' Rule 56.1 Statement, other than the fact that grievances were filed with respect to them, nor were they the subject of any affidavits.

defendants are entitled to qualified immunity.  The doctrine

of qualified immunity provides "that government officials

performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct

does not violate clearly established... constitutional rights

of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).  "The qualified

immunity standard gives ample room for mistaken judgments by

protecting all but the plainly incompetent or those who

knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224,

229 (1991) (per curiam) (internal citation and quotation

marks omitted).

Courts perform a two-step analysis to determine whether

an official is entitled to qualified immunity.  Saucier v.

Katz, 533 U.S. 194, 201-02 (2001); Loria v. Gorman, 306 F.3d

1271, 1281 (2d Cir. 2002).  First, the Court must undertake a

threshold inquiry into whether the plaintiff's allegations,

if true, establish a constitutional violation.  Saucier, 533

U.S. at 201.  If the plaintiff's allegations do not state a

constitutional claim, "there is no necessity for further

inquiries concerning qualified immunity."  Id.  Similarly, if

the plaintiff's constitutional claims are procedurally

barred, or have already been disposed of in a motion for

summary judgment, the Court need not reach the question of

qualified immunity.  Second, if a violation could be made out

on a favorable view of the parties' submissions, the next

step is to ask if the right was "clearly established" at the

time it was allegedly infringed.  Id.  "The relevant

dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he

confronted."  Id. at 200.

The only constitutional claims that have survived

dismissal are limited claims of retaliation in violation of

the First Amendment against Marchase and Menifee and racial

discrimination in violation of the plaintiff's right to equal

protection based on the same incidents against the same

defendants.[15]  Both rights were clearly established at the

time of the incidents in question.  See, e.g., Hayes v.

Coughlin, No. 87 Civ. 7401, 1996 WL 453071, at *3 (S.D.N.Y.

Aug. 12, 1996) ("[T]he right to be free from retaliation was

clearly established in 1987."); see also Wolff v. McDonnell,

418 U.S. 539, 556 (1974) ("Prisoners are protected under the

Equal Protection Clause of the Fourteenth Amendment from

invidious discrimination based on race.").

---

[15] The plaintiff included references in his complaint to the Sixth and
Ninth Amendments.  Even construing the complaint in the light most
favorable to the plaintiff, he has failed to allege any violation of the
Sixth or Ninth Amendment and any such claim is dismissed.

Moreover, it would be clear to any reasonable officer who engaged in the conduct alleged in retaliation for the plaintiff's filing of grievances or because of racial discrimination that his conduct was unlawful.  Therefore, based on the limited record currently before the Court, the Court could not grant summary judgment dismissing these claims against Marchase and Menifee based on qualified immunity.

## IV.

The plaintiff also asserts claims under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C §§ 2671-2680 ("FCTA" collectively).  The plaintiff does not specify what tort claims he is asserting and which defendants he is asserting them against.  The defendants move for summary judgment on the ground that this Court lacks jurisdiction over any claims brought under the FTCA.  The Court agrees.

Under 28 U.S.C. § 2679(b)(1), a plaintiff cannot bring a tort action against individual federal employees where they are acting within the scope of their employment at the time of the alleged tort.  See 28 U.S.C. § 2679(b)(1); Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991).  The remedy under the FTCA is solely against the United States.  See 28 U.S.C. § 2679(a).  Therefore, the plaintiff has no claims against the individual defendants under the FTCA, and the

defendants' motion to dismiss the claims against the individual defendants under the FTCA is granted.

It should also be noted that if the plaintiff attempted to sue the United States under the FTCA, he would be required to exhaust administrative remedies.  See 28 U.S.C. § 2675(a); Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998).  The burden is on the plaintiff to plead and prove compliance with the FTCA's administrative exhaustion requirement.  See Baez v. Parks, No. 02 Civ. 5821, 2004 WL 1052779, at *7 (S.D.N.Y. May 11, 2004).  "Unless a plaintiff has already presented his claim to the relevant federal agency, a district court is required to dismiss for lack of subject matter jurisdiction."  Gerry v. Behr, No. 98-CV-4820, 1998 WL 782015, at *4 (E.D.N.Y. Nov. 6, 1998); see also Robinson, 21 F.3d at 510 (citing McNeil v. United States, 508 U.S. 106 (1993)).

In response, the plaintiff does not dispute that he has failed to exhaust his administrative remedies with respect to the FTCA.  In fact, the plaintiff has never filed an administrative claim with the BOP concerning the allegedly tortious conduct of the defendants or any other BOP employees.  The plaintiff may not rely on his exhaustion of his Bivens claims under the PLRA to bypass the FTCA requirement.  "The exhaustion procedures under the two

statutes differ, and the fulfillment of one does not constitute satisfaction of the other." Owusu v. Fed. Bureau of Prisons, No. 02 Civ. 0915, 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7, 2003).

The plaintiff argues that the Court has jurisdiction over his FTCA claims because the United States has "waived" the defense of lack of subject matter jurisdiction by the Federal Bureau of Prisons Program Statement No. 1330.13. Under 1330.13(6)(b)(1), "The Coordinator shall ensure that the inmate is advised that a monetary request is more appropriately submitted under the Federal Tort Claims Act (FCTA)." The plaintiff argues that while he was in prison, the defendants were required to advise him of the exhaustion requirement under the FTCA "in writing." Because they did not do so, the plaintiff argues that the United States should be estopped from asserting a defense of lack of subject matter jurisdiction. This argument is without merit.

The defendants correctly point out the compliance with the administrative exhaustion requirement under 28 U.S.C. § 2675(a) is a jurisdictional prerequisite to bringing suit under the FTCA. See Celestine v. Mount Vernon Neighborhood Heatlth Center, 403 F.3d 76, 82 (2d Cir. 2005). Consequently, because the requirement is jurisdictional, it cannot be waived. See id.

Therefore, the plaintiff's claims against the defendants under the FTCA are dismissed.

## V.

The plaintiff also asserts claims under 42 U.S.C. § 1981, which prohibits certain types of discrimination. However, § 1981 applies only to state actors and not to federal officials.  See Dotson v. Griesa, 398 F.3d 156, 162 (2d Cir. 2005).  Therefore, because the plaintiff has sued only federal officials acting under federal law he has no claim against the defendants and the claim must be dismissed.

## VI.

The plaintiff also seeks a preliminary injunction against Andrikos based on Andrikos's alleged activities, particularly allegedly tampering with the plaintiff's food. This motion must be denied as moot because the plaintiff was schedule to be released from FCI Otisville on December 22, 2005 and will no longer be in contact with Andrikos.  See McClenton Letter dated Dec. 15, 2005; Gilliam v. Quinlan, 608 F.Supp. 823, 838-39 (S.D.N.Y. 1985).  Therefore, the plaintiff's motion for a preliminary injunction is denied.

Moreover, the plaintiff has failed to satisfy the requirements for a preliminary injunction against Andrikos. To obtain a preliminary injunction, the plaintiff would be required to show (1) irreparable injury and (2) either (a) a

likelihood of success on the merits or (b) sufficiently
serious questions going to the merits to make them a fair
ground for litigation, and a balance of hardships tipping
decidedly in the plaintiff's favor.  See, e.g., Forest City
Daly Housing, Inc. v. Town of N. Hempstead, 175 F.3d 144, 149
(2d Cir. 1999); JSC Foreign Econ. Ass'n Technostroyexport v.
Int'l Dev. and Trade Servs., Inc., 306 F.Supp.2d 366, 387
(S.D.N.Y. 2003).

The plaintiff cannot establish irreparable injury
because he was scheduled to be transferred away from Andrikos
and there is no showing that the plaintiff will suffer any
harm – much less irreparable harm – in the absence of an
injunction.  The plaintiff also cannot establish any
likelihood of success on his claim against Andrikos.  The
claim is not included in the complaint and there is no
showing that the plaintiff exhausted his administrative
remedies with respect to the claim.  Moreover, the plaintiff
candidly concedes that he is not sure that Andrikos
interfered with his food.

The request for a preliminary injunction is therefore
denied.

## CONCLUSION

For the reasons explained above, the defendants' motion
for summary judgment is granted in its entirety except for

the claims explained above against Marchase and Menifee with respect to alleged retaliation and racial discrimination. The motion for summary judgment is denied on these claims without prejudice to renewal.

The plaintiff's motion for a preliminary injunction is denied.

**SO ORDERED.**

**Dated:** **New York, New York**
**August 22, 2006**

John G. Koeltl
United States District Judge